Green, J.
The lot in question was levied on and sold by virtue of an execution issued from the Federal Court for the District of West Tennessee, founded on a judgment against the complainants in that court. This bill is brought to redeem the lot, alleging, that a tender has *210 been made to the purchaser; that all the other requisites of the act of 1820, ch. 11, have been complied with, and th^t the defendants refuse to permit them to redeem.
The only question is, whether, on a sale made by virtue of an execution founded on a judgment had in the Federal Court, the defendant in the execution has a right to redeem.
It is insisted, that by the act of Congress of 1828, further to regulate processes of the United States, the complainants have a right to redeem according to the provisions of the act of Assembly of 1820, ch. II. The lot was sold and the defendant purchased it, at the Marshal’s sale in January, 1827. If, at that time, there was no law authorizing its redemption, the defendant acquired by his purchase, a good and indefeasible title’to the property. No subsequent law could divest him of that title, or annex conditions to the tenure by which it was held. Were the act of Congress to have this operation, it would take away, without his consent, the property of the defendant and give it to the complainants, which cannot be done.
It is next to be considered whether the act of 1820, ch. 11, applies to cases of sales by virtue of process issuing from the Federal Court.
I think it cannot. Congress have an undoubted right to say what property shall be liable to the satisfaction of judgments rendered in the courts of the United States. It is a necessary incident to the judicial power, that the courts have the means of executing their judgments. The process act of Congress, of 1792, adopted the process in use in the States, as it existed in 1789, and rendered property liable to the satisfaction of the judgments of the Federal Courts, which ivas liable in the States respectively, to the satisfaction of judgments in the State courts. Lands were then liable here to unconditional sale by fi. fa. The law of Congress has not been changed until the act of 1828. As the act- of the *211 Tennessee Assembly of 1820, ch. 11, interposes a condition to the sale oí lands, (it intended' to apply to sales by execution from the Federal Courts,) it interferes with the execution of the United States process, and annexes conditions to the acts of the Marshal, and places him under the control of State authority.
ff it be insisted that this law does not interfere with, or in any wise act upon, the process of the Federal Courts, or the sale of the Marshal, then it follows that the sale is made without condition, and the purchaser gets an indefeasible title. Of this title he cannot be deprived by any legislative enactment, and therefore there can be no obligation upon him to permit its redemption. The only ground upon which the purchaser under an execution from -the State courts, can be compelled to give up land purchased by him, and for which he has a deed, is, that this act of Assembly regulates the process of the State courts, and annexes an equitable condition to the sale, which before was absolute. But as it cannot interfere with the process of the Federal Courts, this act does not annex any such condition to the sales of the Marshal, and consequently, an absolute right is conveyed by his deed to the purchaser. Of this right he cannot be divested without his consent. 10 Wheaton’s Rep. 1—51.
I think the decree should be reversed.
Catron, Ch. J.
I would not feel it incumbent on me to express my opinion in writing in this cause, had not the two sitting Judges with myself, differed in opinion on its hearing.
The object to be attained by the formation of the Federal Constitution was, to ordain and establish a Government, distinct’from, and independent of the State governments.. This was the fatal defect of the Confederation. The general laws of the whole Union are declared tobe the supreme law of the land, any thing in the State constitutions or laws to the contrary notwithstanding. *212 They operate directly on every citizen. These laws generally would have been useless, had not a judiciary been provided to execute them; and a judiciary, without the means of executing its judgments and decrees, would be useless. Congress is authorized to make all laws which shall be necessary and proper, for carrying into execution the powers granted or vested in the government, or any department or officer thereof; hence, Congress has the right to prescribe the measure of justice, and the mode of administering it, in cases where the Federal Courts have jurisdiction. This -was necessary to protect the foreigner and the citizen of a different State, against any stay laws and virtual denials of justice, by withdrawing from execution the property of the debtor by the State governments. One of the prominent evils that brought about the Convention and the adoption of the Federal Constitution, was, the denial of justice by the State governments to the non-resident creditors. Justice was most unreasonably delayed by imparlances and stays of execution; and when execution was had, the debtor might tender property or depreciated paper money in payment. The revenues of the Federal Government, amounting to many millions annually, were to be collected, and the numerous contracts of the government were to be enforced, of course, within the territorial limits of the States, and if Congress had not the power to prescribe the measure of redress, that is, the property subject to execution, the State governments might withdraw all the property of the debtors from levy, sap the foundation of the government and produce its overthrow. If one State government, New York, for instance, had this power, and were to exercise it, of necessity the others would follow the example; for at the single port of the city of New York is collected two-thirds and more of the whole revenue. To withdraw from Congress the right to declare the mode of satisfaction, and to hold that the laws of the States bound the Federal Courts, inde *213 pendent of the legislation of Congress, would be a very dangerous assumption. Suppose New York were to pass a law declaring that all judgments should be stayed two years, or that they should be stayed two years, unless the creditor would take in payment depreciated bank notes, worth little or nothing; or that the debtor should have two or ten years to redeem the property sold, and to retain possession in the mean time; and these laws bound the United States’ courts; what would be the consequence? That the revenue could not be collected. That the law giving the government a priority of payment would be a dead letter, because the creditor would have ample opportunity to waste his property. That the other States would refuse to sustain the government alone, adopt similar laws for their protection, and the government would be ruined. The means of enforcing the government dues, are the means of self-preservation. The Constitution makes no distinction, or reservation of rights in favor of the debtor to an individual, and the debtor of the government. In all cases where Congress has the power to cause to be enforced the contract, the mode and measure of redress is general and unrestricted by State legislation, unless this be adopted by Congress.
The Supreme Court of the United States held, in Wayman vs. Southard, (10 Wheaton, 22,) that the clause authorizing Congress to make all laws necessary and proper for carrying into execution the granted powers, and all other powers vested by the Constitution in the government of the United States, or any department thereof, conferred power to make all laws for carrying into execution all'the judgments which the judicial department had power to pronounce; and that this seemed to be oné of those plain propositions which reasoning could not render plainer. The terms of the clause neither admitted or required elucidation, and the court would therefore only say, .-that no doubt whatever was entertained on the *214 power of Congress over the subiect. The only inquiry was, how tar it had been exercised.
By this adjudication we are bound, because, should we decide differently, the Supreme Court of the United States could in this case reverse our judgment, by virtue of the 25th section of the judiciary act.
The principal reliance in this cause on the part of the complainants, is placed on the 34th section of the judiciary act of 1789, ch. 20, which enacts, “That the laws of the several States, except where the Constitution, treaties, or statutes of the United Stales shall otherwise require or provide, shall be regarded as the rules of decision in trials at common law, in the courts of the United States, in cases where they apply.”
This section furnishes the rule of decision, not of executing the judgment. 10 Wheaton, 24—51.
The process act of 1792, ch. 137, is the law which regulated executions issuing from the courts of the United States in 1827, when the sale of the land sought to be redeemed, took place. It adopts the practice of the Supreme Court of the State, where the United States’ Court is holden, such, as the practice and the law governing it were in 1789, when the judiciary act was passed, as the rule to govern proceedings on executions, subject to such alterations as the courts of the United States may make, but not subject to any alterations which have taken place since 1789, in the State law and practice. 10 Wheaton, 31, 32.
The act of 1828, ch. 68, “further to regulate processes in the courts of the United States,” has no application to this case.
The decree will be reversed, and the bill dismissed.